UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THUY P. JOSEPH,<br><br>     Plaintiff,<br><br>  v.<br><br>BOISE STATE UNIVERSITY, also known as BSU; LINDA OSGOOD; SHARON MC GUIRE; SARAH TOEVS; JANE BUSER; LESLIE WEBB; PAMELA SPRINGER; HANNAH LEE; TIM DUNNAGAN; and GLENDA HILL,<br><br>     Defendants. | Case No. 1:12-cv-00267-EJL-MHW<br><br>**REPORT AND RECOMMENDATION** |

On December 12, 2012, this case was referred to the undersigned for all pretrial matters. *Order of Reference*, Dkt. 17. Now pending before the Court is Defendant Boise State University's ("Boise State") Second Motion to Dismiss (Dkt. 31) seeking dismissal of Plaintiff's Amended Complaint (Dkt. 27) or, in the alternative, an order directing Plaintiff to file a more definite statement. Having reviewed the written arguments of the parties, as well as the record in this case, the Court has determined that oral argument is

**REPORT AND RECOMMENDATION - 1**

unnecessary, and therefore enters the following Order recommending that Boise State's motion be granted and that Plaintiff's Amended Complaint be dismissed without leave to amend.

## REPORT

## BACKGROUND

### 1.      Procedural

Plaintiff, proceeding *pro se*, filed this action against Boise State and the Idaho Human Rights Commission alleging racial discrimination.  Defendants sought to dismiss the action on the grounds of improper service and failure to state a claim for relief based, in part, on Plaintiff's failure to comply with the requirement of Fed. R. Civ. P. 8(a) that a complaint contain a short and plain statement of the facts.  The Court held oral argument on the first Motion to Dismiss on February 8, 2013.

The Court ultimately recommended to presiding District Judge Edward J. Lodge that the Complaint against the Idaho Human Rights Commission be dismissed without leave to amend and that the Complaint against Boise State be dismissed with leave to amend to cure certain deficiencies.  More specifically, the Court noted that the Complaint was difficult to understand, that Plaintiff had failed to comply with Rule 8(a)'s requirement that it contain a "short and plain statement of the claim," and had – despite the lengthy Complaint and numerous attachments – failed to assert a basis for the Court's jurisdiction, the nature of the claim, and the remedy sought.  Assuming that Plaintiff was attempting to assert a claim under Title VI of the Civil Rights Act of 1964, the Court

**REPORT AND RECOMMENDATION - 2**

noted that her allegations of discriminatory treatment based on race were generalized and conclusory against Boise State and that she had not pleaded facts sufficient to infer that discrimination was a substantial or motivating factor in Boise State's actions.

In recognition of Plaintiff's *pro se* status, the Court recommended leave to amend the Complaint to state a cause of action under Title VI and to comply with Rule 8(a)'s mandate of a short and plain statement of the Court's jurisdiction and her claim.  The Court noted that it was not necessary to provide detailed accounts of her issues with Boise State and her attempts to deal administratively with those issues.  Furthermore, it stated that she must allege specific facts tending to show that she was treated differently from other non-Asian individuals primarily because of her race.

Judge Lodge entered an Order adopting the Court's Report and Recommendations in its entirety.  *See* Dkt. 26.  Plaintiff thereafter timely filed her Amended Complaint (Dkt. 27) naming not only Boise State but also nine professors and administrative officials as Defendants.  She also made allegations against a tenth individual in the body of the Amended Complaint.  Only Boise State has been served with the Amended Complaint, and the Motion pertains only to this served Defendant.  While a review of the docket indicates that summonses have not been issued for service on the individual Defendants, the Court will discuss the allegations that have been made against them.

**2.    Factual**

Plaintiff is an Asian of Vietnamese origin who moved to the United States in 1996.  She has spoken only English on a daily basis with family and friends for the last

**REPORT AND RECOMMENDATION - 3**

17 years.  She was a student at Boise State from 2005-2011 studying pre-pharmacy in the Health Sciences Department and graduated with a Bachelor of Science degree in May of 2011.  Plaintiff claims she was discriminated against and retaliated against during her last two years at Boise State by professors and administrators in the Health Sciences Department.

Plaintiff alleges numerous instances of perceived slights, but her primary issues appear to be with three incidents involving Professor Osgood, Professor Lee, and Professor Hill.  She complains of Professor Osgood's failure to address her concerns, allow her to retake a test, or follow her syllabus despite being more accommodating to other students in the class.  She complains of Professor Lee's grading of her assignments more harshly than that of other students and otherwise treating her differently as well as losing one of Plaintiff's assignments.  Finally, she alleges that Professor Hill's failure to sign Plaintiff's internship form resulted in her being two credits short of graduation requirements that in turn made it necessary to take a class at the University of Montana Western to make up the credits.  Underlying her claims are general complaints that throughout the last two years at Boise State, Plaintiff felt that Boise State did not follow its own policies or respond satisfactorily to her concerns.

Plaintiff has represented to the Court in oral argument and in writing that she has attempted several times to obtain the services of an attorney to prosecute this action but has been unsuccessful.  The Court notes that she has spent a considerable amount of time and effort in researching and writing her two Complaints and her responses to the two

**REPORT AND RECOMMENDATION - 4**

Motions to Dismiss.  However, it is apparent from her writings and her oral argument that she has difficulty expressing herself in a totally understandable manner.  The Court has gone to great lengths to understand her allegations and causes of action.  Due to the lack of factual and sequential clarity of events in the Amended Complaint, the Court has tried to identify Plaintiff's causes of action by reference to the emails and letters to and  from Boise State personnel that Plaintiff has attached to the Amended Complaint.[1]

In the interest of judicial economy and in recognition of the difficulty Plaintiff would likely have in drafting a Rule 8(a) compliant Second Amended Complaint, the Court will address the issues suggested in the Amended Complaint rather than direct that she file either a Second Amended Complaint or a more definite statement of her causes of action.  For purposes of this Report and Recommendation, the Court will assume that Plaintiff is alleging each cause of action against each Defendant.

## AMENDED COMPLAINT

Plaintiff's Amended Complaint does cure some of the deficiencies noted in the original Complaint since it now states a basis for jurisdiction, makes a claim for damages, and contains a request for relief.

Plaintiff alleges jurisdiction under Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 and alleges violations of those statutes as

---

[1]  In ruling on a motion to dismiss, the Court normally may consider only the factual allegations contained in the Complaint.  However, Courts may consider documents and other materials which plaintiffs attach to the Complaint whose authenticity is not questioned.  *See  Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**REPORT AND RECOMMENDATION - 5**

well as of Title VII of the Civil Rights Act of 1964, the Idaho Human Rights Act, (Idaho

Code Title 6 and Title 67, chapter 59), and the Idaho Tort Claims Act. *Am. Compl* ¶ 11.

Her introductory paragraph under the heading "Nature of the Complaint" summarizes her

claims:

> This is an action based upon the Boise State University's staff
> and officials' failure to comply with their rules and
> procedures, including prejudicial behavior against Plaintiff,
> that have caused Plaintiff to suffer extreme emotional injury,
> as well as resulted in Plaintiff finishing her schooling at the
> University of Montana Western.  Plaintiff claims that the
> Defendants engaged in a pattern and practice of willful and
> deliberate professional misconduct in a bias and prejudicial
> conduct against Plaintiff.  The Defendants knew or should
> have known that their conduct violated Plaintiff's
> Constitutional Rights.

*Am. Compl.* ¶ 5.[2]

As further explained in the Amended Complaint, Plaintiff states that from January

5, 2010 to September 2011, she "asserted her right protected under the University's

policy and Idaho Human Rights Acts to file complaints on racial discriminations and

retaliation from faculty at BSU." *Id*. ¶ 6.  "From June 2010, plaintiff also asserted her

right protected under Civil Rights Act of 1964 to Office of Civil Right because plaintiff

would not receive the fair process from BSU . . . ." *Id*. ¶ 7.  She timely filed her initial

Complaint after receiving her right to sue letter from the Idaho Human Rights

---

[2]  Because English is not Plaintiff's first language, there are understandably many grammar and
usage errors in the Amended Complaint.  Any quotations from the Amended Complaint in this Report and
Recommendation are taken verbatim and include any errors without notation.

Commission "after their bias and unlawful investigation" which resulted in dismissal of her case and "caused Plaintiff to further damage suffered a physical and emotional distress, no longer in well-being and enjoy life, and all expenses." *Id*. ¶ 8. As a result, she "deeply suffered from loss of sleep, irritability, depression, and unable to pursue further education or work due to plaintiff filed this lawsuit and consume all Plaintiff's time, energy and life." *Id*.

Plaintiff alleges that Boise State receives federal financial assistance and therefore is subject to the provisions of Title IX of the 1972 Education Amendments (20 U.S.C. § 1681); that Professor Osgood is the Assistant Professor/Director of the Health Information and Information Management Program, in the Department of Community and Environmental Health, in the College of Health Sciences at Boise State and "was acting under the authority or color of state law;" and that the remaining Defendants are "BSU officials that had direct involvement by interfering with Plaintiff's efforts to acquire a fair and impartial review of her grievances" and that they were all "acting under the color of state law." *Id*. ¶¶ 14-16.

In her prayer for relief, Plaintiff requests "liquidated damages" of $250,000 for willful violation of the law, a "money judgment representing suffered well-being, physical and emotional distress, loss of sleep, irritability, anxiety, loss of happy, naive, creativity, well-being, enjoy life and damages related to health and medical treatment including past, present and future that arises," reimbursement for tuition at Boise State and University of Western Montana, reinstatement of internship credits and grade in

**REPORT AND RECOMMENDATION - 7**

epidemiology class, legal fees and costs.  *Am. Compl.* at 43.  In addition, she claims lost concentration and inability to study, negative impacts on her family and spousal relationships, denial of her graduate school application at Idaho State University, and inability to study well on the LSAT test and Insurance License Test.  *Id.*

In her Amended Complaint, Plaintiff alleges specific statutory violations of certain individual Defendants but does not identify specific statutory violations for others.  The summary of allegations against each individual Defendant appears below.

**1.    Linda Osgood**

Plaintiff alleges violations of the Idaho Human Rights Act, and the Civil Rights Act of 1964.  *Am. Compl.* ¶ 17.  Her references to acting under color of state law presumably relate to a § 1983 claim.  *Id.*  ¶ 15.  She also alleges failure to comply with the "contract" between Professor and students stated in her syllabus.  *Id.*  ¶ 17.  Plaintiff's factual allegations in support of her causes of action appear at  paragraphs  41 through 70 of the Amended Complaint.  Despite the lengthy recitation of facts, it appears that they pertain primarily to two areas of dissatisfaction.

First, Plaintiff was dissatisfied with Professor Osgood's failure to respond in a timely fashion to her inquiries about incorrect answers on her first test although the Professor responded to other students' inquiries promptly.  She claims that Professor Osgood  repeatedly told her she was too busy to respond to her questions stating that she would "work something out" at the end of the semester.  Second, Professor Osgood did not respond to Plaintiff's email requesting that an exam be rescheduled due to illness

**REPORT AND RECOMMENDATION - 8**

although the Professor did allow other students to reschedule their exams due to illness.

Interspersed with the facts are allegations that Professor Osgood treated her differently because of her race.  For exampe, she was the only Asian student in the class of 50 or so.  *Am. Compl.* ¶ 42.  Professor Osgood allegedly discriminated against her because of race and abused or exhibited bad behavior toward her for three months.  *Id.* ¶ 43.  "It is obvious that Professor Osgood is prejudiced against Plaintiff because she always answers the non-Asian students' questions immediately, but refuses to answer the Asian Plaintiff's questions."  *Id.* ¶ 58.   By the end of the semester,  "Professor Osgood still did not respond to plaintiff's questions regarding on the first exam.  The reason was just based on plaintiff's race and denied the fair treatment among students."  *Id.*  ¶  60.

## 2.    Sarah Toevs

Plaintiff alleges that Sarah Toevs violated Title VII and the Idaho Human Rights Act by violating Boise State policies.  Plaintiff's allegations against Professor Toevs appear at paragraphs 71-84 of the Amended Complaint.

Plaintiff met with Professor Toevs, Chairman of the Health Sciences Department, in January of 2010 to discuss her issues with Professor Osgood.  Plaintiff complained that Professor Osgood did not follow her syllabus.  Plaintiff states that Professor Toevs acknowledged Professor Osgood's treatment of Plaintiff was discriminatory in their first meeting.  However, after meeting with Professor Osgood about Plaintiff's issues, Professor Toevs stated merely that Professor Osgood recognized that the course had not gone as well as it should have and that Professor Osgood was one of the best teachers in

**REPORT AND RECOMMENDATION - 9**

the department and college.  This, in Plaintiff's opinion, was "a coverup and conspiracy to protect Professor's [Osgood's] misconduct and failed to adequately take action and protect plaintiff from further harm and damage suffered after plaintiff used the University policy to be protected." *Am. Compl.* ¶ 75.

Plaintiff also alleges that Professor Toevs retaliated against her for filing a complaint with the Idaho Human Rights Commission by failing to uphold Professor Lee's proposal for dealing with a lost assignment Plaintiff claimed she timely handed in to her Professor.[3]  Plaintiff alleges that Professor Lee was willing to give her full credit of 25 points for the missing assignment.  However, Professor Toevs would only approve a credit of 20 points based on the class average given that there was no proof that the assignment had been turned in.  Plaintiff states, "Instead of taking adequate action under her authority to solve plaintiff's complaints, defendant Sarah Toevs with intentional actions caused plaintiff unable to receive full credits, received correct grade, and plaintiff's appeal was reject."  *Id.* ¶ 81.

Plaintiff concludes that "Defendant Sarah Toevs was acting as an authority for the College of Health Science as well as acting in her respective official capacities as representative of the University and under color of legal title and authority." *Id.*  ¶ 84. With respect to Boise State, she states that "Boise State University knew of these discrimination and retaliation and intentionally failed to take proper corrective steps, or it

---

[3]  The lost assignment issue is discussed below.

**REPORT AND RECOMMENDATION - 10**

was deliberately indifferent to the retaliation thus encouraging it to continue." *Id.* ¶ 83.

**3.   Pamela Springer**

Plaintiff's allegations against Associate Dean Pamela Springer appear at paragraphs 85-90 of the Amended Complaint.

In January of 2010, Plaintiff met with Associate Dean Pamela Springer who then facilitated a meeting with Professors Toevs and Osgood to address a list of questions and/or a statement presented by Plaintiff.  Professor Osgood could not or would not respond to Plaintiff's allegations regarding "inequality treatment," inconsistencies with her syllabus, and Blackboard[4] and BroncoWeb[5] issues. *Am. Compl* ¶ 86.  Plaintiff stated she did not receive any answers from Dean Springer whom she alleged "failed to take appropriate action when plaintiff exercised her right protected under her authority to correct misconduct and prevent further harm and damage suffered from other administrators against plaintiff." *Id.*  ¶ 89.

**4.   James Girvan**

Plaintiff has not named James Girvan as a Defendant.  However, she alleges that

---

[4]  Blackboard refers to Blackboard Learn which, according to Boise State's website "is a web-based course-management system designed to allow students and faculty to participate in classes delivered online or to use online materials and activities to complement face-to-face teaching. Blackboard enables instructors to provide students with course materials, discussion boards, virtual chat rooms and webinars, online quizzes, an academic resource center, and more." *See* *http://at.boisestate.edu/lmshelp/learning-about-blackboard/*

[5]  BroncoWeb, now known as "myBoiseState," allows students to access personal information, register for classes, and access BroncoMail and Blackboard. *See* *https://my.boisestate.edu/pages/default.aspx*

**REPORT AND RECOMMENDATION - 11**

he violated 42 U.S.C. §§ 1983 and 1985.  Her allegations against him appear at ¶¶ 91-93.

James Girvan is the former Dean of the College of Health Sciences.  He was the department head of the College of Health Sciences "with authority to address alleged discrimination after the Chair and associate Dean failed to adequately respond that caused adverse actions against plaintiff as described above."  *Am. Compl.*  ¶ 91.  Plaintiff claims that he "agreed and conspired with vice provost Sharon McGuire to cover, and protect Professor Osgood misconduct behaviors and to make plaintiff's life as difficult as possible because of plaintiff race and because of plaintiff exercise of her right to equal educational opportunities . . . in violation of 42 U.S.C. § 1983 and 1985."  *Id.* ¶ 92.  She concludes that because Dean Girvan took no action against Professors Osgood, Toevs, or Springer, he encouraged Sharon McGuire "to take still further abusive, humility and retaliation against plaintiff as described below."  *Id.* ¶ 93.

## 5.    Sharon McGuire

Plaintiff alleges that Vice Provost McGuire created a hostile and abusive educational environment and engaged in retaliation.  The allegations against Vice Provost Sharon McGuire appear at paragraphs 94-105.  Plaintiff alleges that she failed to appear for a scheduled meeting with Plaintiff and walked out of another meeting the following week.  The remaining allegations are somewhat unclear, but it appears that Vice Provost McGuire delayed in supplying her with a grievance appeal form.  Plaintiff considers this an act of retaliation for pursuing her rights under the University's policy.

6.    **Tim Dunnagan**

Tim Dunnagan became the then new Dean of the College of Health Sciences in the summer of 2010.  The allegations against Tim Dunnagan appear at paragraphs 106-11.  Plaintiff met with him and the Vice Provost (Sharon McGuire) concerning Professor Osgood's "bad behaviors toward plaintiff throughout the semester." *Am. Compl.* ¶ 106.  She also discussed the internship credits issue with the Dean.

Plaintiff appears to  be alleging that Dean Dunnagan initially told her she was "allowed" to receive the credits but she was run around "like the circus" through various administrators who ultimately determined that she did not receive the necessary credits to graduate causing her to take classes at the University of Montana Western to make up the shortage.  She alleges essentially that Dean Dunnagan condoned Sarah Toevs' retaliatory treatment because she exercised her rights under University policy and the Idaho Human Rights Act.

7.    **Leslie-Webb**

Leslie Webb is the Assistant Vice-President for Student Affairs whom Plaintiff alleges was responsible for the implementation of Boise State's Non-discrimination policy but failed to follow the procedure and to protect her from adverse actions.  The allegations appear at paragraphs 112-115.  Although it is unclear, she appears to be claiming that Ms. Webb violated procedure by holding a hearing on her appeal without Plaintiff's presence.  She also claims that Ms. Webb did not properly investigate her appeal of her discrimination complaint against Professor Lee.  She again claims

**REPORT AND RECOMMENDATION - 13**

retaliation for having filed a complaint with the Idaho Human Rights Commission.

**8.      Jane Buser**

Plaintiff did not provide information as to Jane Buser's position with Boise State.[6] The allegations against Jane Buser appear at paragraphs 116-122.  It appears that Plaintiff discussed with Ms. Buser her complaints of discriminatory treatment by Professor Osgood and of retaliatory treatment by Vice Provost McGuire.  Ms. Buser told her to file a complaint against the Vice Provost with her office.  Mrs. Buser also met with Pamela Springer.  When Plaintiff attempted to deliver her complaint to Ms. Buser, Ms. Buser allegedly would not see her.  Plaintiff then filed her complaint with the Idaho Human Rights Commission.

**9.      Hannah Lee**

The allegations against Hannah Lee appear at paragraphs 112-136.

Plaintiff took Epidemiology from Professor Lee to qualify for graduation. Plaintiff alleges that Professor Lee did not post the total points for Plaintiff or the class on Blackboard as expected which would have allowed Plaintiff to plan for her final exam. *Am. Compl.* ¶¶ 122-23.  On the day of her final exam on December 13, 2010, the teaching assistants handed out essay papers and assignments to every other student in the class but not to her which embarrassed her.  *Id.* ¶ 124.  After the final, she received them

---

[6]  It appears that Ms. Buser was the executive director of Human Resource Services at Boise State from 1973 to her retirement on November 30, 2011.  *See* *http://news.boisestate.edu/update/2010/11/29/bid-farewell-to-jane-buser-at-dec-2-reception/*

**REPORT AND RECOMMENDATION - 14**

with "harsh" grades. After Plaintiff complained, Professor Lee increased her grade but Professor Toevs would not allow the grade correction. *Id.* ¶ 125. Professor Lee also told Plaintiff that she lost her assignment papers. *Id.* ¶ 126. Unable to find it, she gave Plaintiff 25 points for the lost assignment, but it did not increase her grade. *Id.* ¶¶ 129-30. Plaintiff also alleges "[t]he fact of discriminatory against plaintiff from defendant Lee was that after plaintiff sent out an email to the class for help" she received an email from another student who said that Dr. Hannah [Lee] always responded to his emails in a timely matter and was always willing to help. *Id.* ¶ 132. Plaintiff then concludes that Professor Lee treated her differently and discriminatorily from other students. *Id.* ¶ 133. Furthermore, she states that Vice Provost McGuire's rejection of her grade appeal constituted an intentional tort in violation of the Idaho Torts Law Act and Civil Rights Act Title VI and VII. *Id.* ¶ 134.

## 10. Glenda Hill

Glenda Hill had been Plaintiff's advisor since fall of 2005 and they had had a good relationship. *Am. Compl.* ¶ 137. The allegations against Glenda Hill appear at ¶¶ 137-48. The Amended Complaint appears to be missing a page or two in the section dealing with Glenda Hill. However, the Court is familiar with this argument from the Complaint and from oral argument on the Motion to Dismiss that Complaint. Essentially, Ms. Hill told Plaintiff that she (Ms. Hill) had miscalculated the number of Plaintiff's credits and that Plaintiff needed two more credits to graduate. Allegedly, her failure to sign Plaintiff's internship form caused the credit shortage. When Plaintiff appealed the

**REPORT AND RECOMMENDATION - 15**

denial of credits, she was told that she could receive the credits if she paid $504.  *Id.*
¶ 146.  Rather than do so, Plaintiff took a class at the University of Montana Western to
obtain the necessary credits to graduate in May of 2011.  *Id.* ¶ 147.

## MOTION TO DISMISS

Despite the directive of the Court, the Amended Complaint is considerably longer
than the original Complaint with considerably more attached exhibits consisting of emails
and letters by and between Plaintiff and various staff members regarding efforts to
resolve her issues.  Furthermore, Plaintiff has added nine Defendants and several causes
of action beyond the Title VI cause of action referred to in the Court's prior Report and
Recommendation.

Boise State incorporates its arguments from its first Motion to Dismiss that, being
an arm of the state, it is immune from suit and that Plaintiff has not alleged a cause of
action under § 1983.  It additionally claims that, like the original Complaint, the
Amended Complaint "contains conclusory statements rather than logical, understandable
facts and is verbose and antithetical to FRCP 8."  *Mem. Sup. of Mot. to Dismiss*, Dkt. 31-
1 at 3.

## 1.    Standards of Law

As stated in the prior Report and Recommendation, a complaint must be consistent
with Federal Rule of Civil Procedure 8(a) which provides that a pleading that states a
claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

The purpose of the Rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The pleading standard in Fed. R. Civ. P. 8 requires more than "'naked assertion[s]' devoid of 'further factual enhancements.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is *plausible on its face*." *Twombly*. at 570 (emphasis added). Even though a court must accept as true all of the allegations contained in a complaint, that principle is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

**REPORT AND RECOMMENDATION - 17**

alleged. *Twombly*, 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 566 U.S. at 679.

Distilling the holdings of *Twombly* and *Iqbal*, the Ninth Circuit has stated that "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be *plausibly suggestive* of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (emphasis added).

Where, as here, a plaintiff is proceeding *pro se*, the complaint must be liberally construed and she must be given the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Additionally, if the complaint can be saved by amendment, then the plaintiff should be notified of the deficiencies and provided an opportunity to amend. *See Jackson v. Gray*, 353 F.3d 750, 758 (9th Cir. 2003).

**2.    Discussion**

The Court will first address claims against Boise State and then address the claims against the individual Defendants as a group. Plaintiff has alleged several causes of action but only appears to allege that Boise State violated its policies. However, there are

also various allegations implying that Boise State is responsible for its employees'
discriminatory actions, if any.  Therefore, the Court will presume for purposes of this
Report and Recommendation that  Plaintiff is alleging that Boise State violated each
statute identified below.  However, Title VII and Title IX require only brief mention.

## A.   Federal Claims

### (1)   *Boise State*

#### (a)   *Title VII*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, prohibits
employers from failing or refusing to hire or discharging "any individual, or otherwise to
discriminate against any individual . . . because of such individual's race, color, religion,
sex, or national origin."  *Id*. § 2000e-2(a)(1).  By definition, then, an individual "is
entitled to the protections of Title VII only if she is an employee."  *See Murray v.
Principal Financial Group, Inc.*, 613 F.3d 943, 944 (9th Cir. 2010).  Clearly, Plaintiff
here was not an employee of Boise State.  Accordingly, Plaintiff has failed to state a
cause of action against Boise State under Title VII.

#### (b)   *Title IX*

There is a close similarity between Title VI and Title IX, and "[t]he Supreme
Court has repeatedly held that Title IX is based on Title VI and has used similar modes of
analysis to resolve Title IX cases."  *Stanley v. Trustees of California State University*,
433 F.3d 1129, 1134 (9th Cir. 2006) (citations omitted).  However, Title IX is not
applicable here.  Title IX provides that "No person in the United States shall, on the basis

**REPORT AND RECOMMENDATION - 19**

of *sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a) (emphasis added).  Plaintiff has not alleged sex or gender discrimination.[7]  Accordingly, she has failed to state a cause of action under Title IX against Boise State.

### (c)    *Title VI*

As stated in the Court's prior Report and Recommendation, Section 601 of Title VI of the Civil Rights Act of 1964 provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  *See Colwell v. Department of Health & Human Services*, 558 F.3d 1112, 1116 (9th Cir. 2009).  "Private individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages."  *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  "Section 1003 of the Rehabilitation Act Amendments of 1986, 100 Stat. § 1845, 42 U.S.C. § 2000d-7, expressly abrogated States' sovereign immunity against suits brought in federal court to enforce Title VI and provided that in a suit against a State 'remedies (including remedies both at law and in equity) are available . . . to the same extent as such remedies are available . . . in the suit

---

[7]  Responding to Boise State's argument that she had not alleged gender discrimination, Plaintiff states, "Plaintiff was one and only Asia student as well as one and only Asia female student in Defendant Linda Osgood's class of fall 2009."  *Response* ¶ H, at 15 (Dkt. 37).  Clearly this falls far short of stating a cause of action for gender discrimination.

**REPORT AND RECOMMENDATION - 20**

against any public or private entity other than a State,' § 2000d-7(a)(2)." *Id.* at 280.  Title

VI prohibits intentional discrimination only.  *Id.  See also Alexander v. Choate*, 469 U.S.

287, 293 (1985).

"To state a claim for damages under [Title VI], a plaintiff must alleges that (1) the

entity involved is engaging in racial discrimination; and (2) the entity involved is

receiving federal financial assistance."  *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d

1439, 1447 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Daviton v.

Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

A prima facie case of discrimination in the educational context is "membership in

a protected class, meeting the school's legitimate educational expectations, an adverse

educational action and worse treatment than that of similarly situated students not in the

protected class."  *Brewer v. Board of Trustees, Univ. Ill.*, 479 F.3d 908, 921 (7th Cir.

2007), *cert. denied* 552 U.S. 825 (2007).

A motion to dismiss a Title VI claim is appropriate where a plaintiff fails to allege

any evidence to indicate racial bias motivated a defendant's action and the allegations

made support a finding that alleged bias was not racial in nature.  *See Quintero v. Clovis

Unified School Dist.*, 2013 WL 3198767 (E.D.Cal. June 21, 2013).  The "critical

question" in addressing a motion to dismiss is whether the actions or inactions of the

defendants were *because of* their racial bias.  *See Moss*, 572 F.3d at 970 ("The critical

question . . . is thus whether Plaintiffs' allegation that the Agents ordered the relocation of

their demonstration *because of* its anti-Bush message is plausible, not merely possible.")

**REPORT AND RECOMMENDATION - 21**

As a recipient of federal funding, a fact that Boise State does not dispute, Boise

State could be liable to Plaintiff under a proper showing of racial discrimination.

However, as amplified by the content of the numerous attachments to the Complaint,

Plaintiff's allegations of discrimination appear to be merely conclusory and not sufficient

to state the requisite "plausible claim for relief." *See Iqbal*, 556 U.S. at 679.  Her

personal belief that Boise State's actions were racially motivated is conclusory and of no

probative force. *Jones v. University of California Santa Cruz*, 1995 WL 39483 (N.D.Cal.

Jan. 30, 1995) (unpublished). *See also Ikekwere v. Governing Board of Foothill-DeAnza*

*Community College District*, 2010 WL 1948822 (N.D.Cal. May 13, 2010 (unpublished).


Here, in addition to Plaintiff's plethora of allegations, none of which states that she

was meeting Boise State's educational expectations, the Court has the benefit of

numerous attached emails and letters.  Indeed, it appears that she provided too much

information.

Although a plaintiff must provide sufficient facts to survive a motion to dismiss,

providing too much in the complaint may also be fatal to a plaintiff.  Dismissal may be

appropriate when the plaintiff has included sufficient allegations disclosing some absolute

defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th

Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way,

that is as good as if depositions and other . . . evidence on summary judgment establishes

the identical facts").  "Although Federal Rule of Civil Procedure 8(a)(2) requires only that

**REPORT AND RECOMMENDATION - 22**

a plaintiff's complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' by going beyond the bare minimum, a plaintiff may plead herself out of court." *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995) (quoting *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir.1994)).

Despite the abundance of information, the Court – using its "judicial experience and common sense" –  simply cannot find that she has stated a plausible claim of race discrimination.  *See Iqbal*, 556 U.S. at 679.  Rather, the Amended Complaint together with the exhibits taken as a whole are more suggestive of Boise State employees earnestly trying to assist Plaintiff with her various issues.  The Court simply cannot infer that failure to respond to her questions promptly was due to anything other than a misunderstanding, that losing her assignment (for which she was given the benefit of the doubt and graded generously without regard to whether the missing assignment even existed or would have been deserving of the grade) was anything but inadvertent, and that failing to record internship credits was anything other than negligence.  The emails and letters –  far from supporting her claim of discrimination –  convince the Court that race was not a motivating factor behind the actions or inactions of her professors and the administrators.

Although the allegations suggest the *possibility* of discrimination, the statements are primarily conclusory.  While "at some level" the allegations are consistent with a "viable" claim of race discrimination, they only suggest a possibility which is not enough. *Moss*, 572 F.3d at 971-72 ("The facts do not rule out the possibility of viewpoint

**REPORT AND RECOMMENDATION - 23**

discrimination, and thus at some level they are consistent with a viable First Amendment

claim, but mere possibility is not enough.").  *See also Iqbal*, 556 U.S. at 679 ("But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is

entitled to relief.'").

**(d)**    **42 U.S.C. § 1983**

It is unclear whether Plaintiff is attempting to assert a claim under 42 U.S.C.

§ 1983, the civil rights statute.  Although not among the listed statutes in the introductory

portion of her Amended Complaint, Plaintiff makes various references to certain

individual Defendants being state actors and specifically alleges that Defendant Girvan

violated 42 U.S.C. § 1983 and § 1985.

"Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or

immunities secured by the Constitution and laws' of the United States." *Gonzaga

University v. Doe*, 536 U.S. 273, 283 (2002).  Section 1983 is an enforcement mechanism

for rights secured under the Constitution and laws of the United States.  *Id*. at 285.

"[O]ne cannot go into court and claim a 'violation of § 1983 – for § 1983 by itself does

not protect anyone against anything." *Chapman v. Houston Welfare Rights

Organization*, 441 U.S. 600, 617 (1979).  The Supreme Court has recognized that Title

VI created individual rights.  *Gonzaga*, 536 U.S. at 284 (citation omitted).  A statutorily

created right – such as the rights created by Title VI – is presumptively enforceable by

§ 1983 which provides the remedy for the violation of any such right.  *Id*.

**REPORT AND RECOMMENDATION - 24**

Although § 1983 can be used to enforce Title VI rights against entities receiving federal funding, it cannot be used with respect to state entities.  "[I]t has been 'well established for many years' that sovereign immunity precludes §§ 1981 and 1983 damages claims against state entities and state actors in their official capacity." *Braunstein v. Arizona Dept. of Transp.*, 683 F.3d 1177, 1188 (9th Cir. 2012).  Boise State is an arm of the state and thus immune from suit under the Eleventh Amendment of the United States Constitution absent waiver of that immunity.  *See*, *e.g.*, *Krainski v. Nevada ex rel. Bd. of Regents of Nevada*, 616 F.3d 963, 968 (9th Cir. 2010) (affirming dismissal of § 1983 action against University of Nevada Las Vegas on grounds of Eleventh Amendment immunity because UNLV was an arm of the State of Nevada); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("We have held that a state university is an arm of the state entitled to Eleventh Amendment immunity."); *Armstrong v. Meyers*, 964 F.2d 949-50 (9th Cir. 1992) (per curiam) (affirming dismissal of § 1983 action against the Regents of the University of California on Eleventh Amendment grounds).  There is no allegation that Boise State waived its immunity.  Nor can the Court infer that it did given its claim of immunity in the Motion to Dismiss. Therefore, to the extent that Plaintiff may be asserting a cause of action against Boise State under § 1983, Plaintiff fails to state a cause of action.  Nor can Boise State be liable for any unconstitutional conduct of its employees on a *respondeat superior* or vicarious liability theory in a § 1983 action.  *See Iqbal*, 556 U.S. at 676.

**REPORT AND RECOMMENDATION - 25**

### (e)   *Retaliation*

Plaintiff has asserted retaliation claims under Title VII.  However, as shown above, Title VII is only applicable in the employer context.  Given that Boise State was not Plaintiff's employer, it is not applicable here.  In her Response to the Motion to Dismiss, Plaintiff, citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006), states that "Title VII's retaliation provision is not limited to an employer's employment-related or workplace actions."  *Response* at 10.  However, Plaintiff misconstrues the cited language.

The holding in *Burlington Northern* did not mean that its retaliation provision was applicable beyond Title VII cases.  Rather, it held that the covered retaliatory actions were not confined to those affecting the terms, conditions, or status of employment, or even those that occur at the workplace.  *Id*. at 62-64.  "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."  *Id*. at 67.  For example, an employer can be liable for retaliating against an employee filing a discrimination grievance by filing a false criminal charge against him.  *Id*. at 63 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996)).

To the extent that Plaintiff may be asserting retaliation under Title VI, she has failed to allege a cause of action.  Her allegations of retaliation are conclusory and border on frivolous.  For example, she alleges that Professor Toevs retaliated against her for filing a complaint with the Idaho Human Rights Commission by not upholding Professor Lee's agreement to credit her with 25 points for a lost assignment and only approved a

**REPORT AND RECOMMENDATION - 26**

credit of 20 points based on the class average and rejected her appeal.  The fact that Plaintiff was given any points at all demonstrates a willingness to work with her.  Next she alleges that Vice Provost McGuire's delay in supplying her with a grievance appeal form was an act of retaliation.  She also alleges Assistant Vice President for Student Affairs Leslie Webb retaliated by not properly investigating her appeal of her discrimination complaint against Professor Lee.  However, when the allegations are considered in the context of the emails and letters, these allegations do not even reach the level of a possibility of retaliation much less a plausible inference that these actions or inactions rose to the level of retaliation.

In speaking of retaliation in the Title VII context, the Supreme Court stated "We speak of *material* adversity because we believe it is important to separate significant from trivial harms."  *Burlington Northern*, 548 U.S. at 68 (emphasis in original).  The Court considered action to be materially adverse if "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id*.  Here, placing the standard in the educational context, none of the alleged retaliatory actions was material such that it would have dissuaded a reasonable student from making a charge of discrimination.  Indeed, it did not discourage Plaintiff from doing so.

### (2)   *Individual Defendants*

Although Plaintiff has not served the individual Defendants with the Amended Complaint, in the interest of judicial economy, the Court will *sua sponte* address the claims against them.  *See Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742-43

**REPORT AND RECOMMENDATION - 27**

(9th Cir. 2008) (upholding dismissal of unserved defendants who were in the position similar to an appearing defendant); *Columbia Steel Fabricator's, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) (upholding granting of summary judgment in favor of non-appearing party); *Silverton v. Dep't. of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (upholding dismissal with prejudice in favor of non-appearing party).  *See also Guerrero v. Greenpoint Mort. Funding, Inc.*, 403 Fed. Appx. 154, 157 (9th Cir. 2010) (finding, based on *Abagninin*, that appearing parties "had argued sufficient facts and highlighted sufficient deficiencies in the Guerrero's complaint that the district court did not err in dismissing the claims as to Financial Company of America as well.").

### (a)    *Statute of Limitations*

At the outset, the Court notes that the statute of limitations may have run as to some of the alleged acts and some of the named Defendants.  Therefore, even if causes of action were otherwise available under Plaintiff's various theories, they would be time-barred.

The state's personal injury statute of limitations applies to claims under 42 U.S.C. § 1983.  *See Wilson v. Garcia*, 471 U.S. 261, 275 (1985).  The same statute of limitations applies to Title VI claims.  *See Taylor v. Regents of University of California*, 993 F.2d 710, 712 (9th Cir. 1993).  It likewise applies to claims under Title IX.  *See Stanley v. Trustees of California State University*, 433 F.3d 1129, 1134 (9th Cir. 2006) (noting decisions of other circuits and the close similarity between Title VI and Title IX).  Accrual of a cause of action is generally at the time of the discriminatory acts and "not

**REPORT AND RECOMMENDATION - 28**

upon the time at which the consequences of the acts became most painful." *Id*. at 1136 (citation omitted). The Idaho statute of limitations for personal injury is two years. *See* I.C. § 5-219.

Here, Plaintiff filed the Amended Complaint adding the individual Defendants on March 18, 2013. Therefore, any challenged actions that occurred before March 18, 2011 would be time-barred.

### (b) *Merits*

Even if not dismissible on statute of limitation grounds, Plaintiffs' claims appear to be dismissible against the individual Defendants on the merits. The individual Defendants cannot be liable under Title VI because the statute only prohibits discrimination by *entities* receiving federal funding. *See Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1169 (11th Cir. 2003) (emphasis added) (string citations omitted). *See also Rashdan v. Geissberger*, 2011 WL 197957 at *8 (N.D.Cal. Jan. 14, 2011); *Santos v. Merritt College*, 2008 WL 2622792 (N.D.Cal. Jul. 1, 2008). They cannot be liable under Title VII because they were not Plaintiff's employer. *See Murray*, 613 F.3d at 944. Finally, employees of entities receiving federal assistance cannot be liable under Title IX. *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009) (noting Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.")

With regard to § 1983, any action against the individual Defendants in their official capacities would be barred as essentially being an action against Boise State. *See*

**REPORT AND RECOMMENDATION - 29**

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  Suing employees in their official capacities is redundant where the entity is sued as well.  *Henry v. Universal Technical Institute*, 2012 WL 1623162 (D. Ariz. May 9, 2012).

Individuals may be liable under § 1983 for unconstitutional conduct.  *See Iqbal*, *supra*.  However, given the Court's determination that Plaintiff has not stated a cause of action of race discrimination, the Court need not address the issue of potential individual liability.

      **B.**     **State Law Claims**

      **(1)**     ***Boise State and Official Capacity Claims***

With respect to Boise State and the individual Defendants acting in their official capacity, the claims are subject to dismissal on sovereign immunity grounds.  Just as sovereign immunity precludes a federal court from pursuing federal claims against the state or state actors in their official capacity, it likewise precludes a federal court from adjudicating state law claims against them since "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  *See also Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (11th Amendment precludes adjudication of pendent state law claims against state);  *Akins v. San Diego*,  2013 WL 40976 (S.D.Cal Jan. 2, 2013) (dismissing § 1983

**REPORT AND RECOMMENDATION - 30**

and state law claims against state community college).

### (2) *Individual Capacity Claims*

The only remaining claims would be those against the individual Defendants in their individual capacities.  The Eleventh Amendment does not bar federal or state law claims against persons sued in their individual capacity.  *Ashker v. California Dept. of Corrections*, 112 F.3d 392, 394-95 (9th Cir. 1997).

Given that it appears that Plaintiff has not stated a cause of action under federal law against the individual Defendants in their individual capacities, the Court must address the issue of whether to retain jurisdiction over Plaintiff's state law claims under the Idaho Human Rights Act, the Idaho Torts Claim Act, and any breach of contract or other claim she may be attempting to assert.

"The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion."  *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007).  Factors to be considered when making the decision are economy, convenience, fairness, and comity.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).  Generally, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims.  *Id.  See also Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (finding the balance of relevant pendent jurisdiction factors did not tip in favor of retaining the state law claims after dismissal of

**REPORT AND RECOMMENDATION - 31**

the ADA claim).

Here, no trial date has been set, the individual Defendants have not been served, and Boise State has not briefed the state court issues given its position that the Amended Complaint is difficult to understand. Therefore, there would be no duplication of effort addressing those issues in state court. Accordingly, the Court finds the balance favors not retaining the state law claims leaving Plaintiff to pursue them in state court if she so chooses.

## CONCLUSION

As stated above, Plaintiff has expended considerable time and effort on the issues raised in her Amended Complaint from the time of the actual problems in the Health Sciences program occurred. Having the benefit of the numerous email and letter exchanges between Plaintiff and various Defendants, the Court has the very definite sense that her problems are not based on discriminatory treatment. Indeed, defense counsel's and the Court's difficulties in deciphering her pleadings reinforce the Court's belief that her issues were the result of difficulties of the faculty and administration in understanding her issues. It is apparent that Plaintiff is quite intelligent. It is also apparent that Plaintiff had a frustrating and stressful last two years at Boise State. However, the Court cannot plausibly infer that her issues were motivated by racial discrimination.

## RECOMMENDATION

Based on the foregoing, and the Court being otherwise fully advised in the

**REPORT AND RECOMMENDATION - 32**

premises, the Court **hereby RECOMMENDS** that:

1.     Defendant Boise State University's Second Motion to Dismiss (Dkt. 31) be **GRANTED** and the case **DISMISSED** against Boise State with prejudice and without leave to amend.

2.     The causes of action against Defendants Linda Osgood, Sharon McGuire, Sarah Toevs, Jane Buser, Leslie Webb, Pamela Springer, Hannah Lee, Tim Dunnagan, and Glenda Hill be **DISMISSED** with prejudice and without leave to amend and that the causes of action against James Girvan, to the extent that Plaintiff intended to name him as a Defendant, be **DISMISSED** with prejudice and without leave to amend.

3.     Written objections to this Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.  Each party shall then have ten (10) days to respond to the other party's objections.  No replies to the responses need be filed.

DATED: August 13, 2013

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 33**